# EXHIBIT

# 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v.                                               ) <br> ) <br> JALIYA CHITRAN WICKRAMASURIYA,  ) <br> ) <br> Defendant.                            ) <br> _____) | 18-cr-120 (TSC) |

## DECLARATION IN SUPPORT OF GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS THE INDICTMENT ON DIPLOMATIC IMMUNITY GROUNDS

I, Mary Catherine Malin, being first duly sworn, hereby depose and state as follows:

1. I am the Assistant Legal Adviser for the Office of Diplomatic Law and Litigation in the Office of the Legal Adviser at the U.S. Department of State (hereinafter, "State Department"). I have served in this position for ten years and with the State Department for thirty-five years. The State Department's Office of Diplomatic Law and Litigation is responsible, among other things, for the interpretation of international law and treaties related to matters of immunity, including the Vienna Convention on Diplomatic Relations (VCDR). I make this declaration based upon my personal knowledge and information provided to me in my official capacity.

2. Under the VCDR, diplomatic agents accredited to the United States as members of a foreign government's diplomatic mission enjoy complete immunity from the criminal jurisdiction of the receiving state (here, the United States) during the period of their assignment. *See* VCDR, Art. 31. This immunity is based upon their status as diplomatic agents and covers both their official and private conduct. Generally, during that time, diplomatic agents may not be

arrested, detained, prosecuted or sued unless their immunity is waived by their government. The purpose of extending such broad immunity, including to a diplomatic agent's private acts, is to ensure the efficient functioning of a diplomatic mission, not to benefit the private individual, and this purpose terminates when the individual ceases to be a diplomatic agent.

3. After a diplomatic agent's position comes to an end, he or she no longer enjoys broad, status-based immunity under the VCDR, but rather enjoys immunity only with respect to acts performed in the exercise of his or her functions as a member of the mission. *See* VCDR, Art. 39(2). This is often referred to as "residual immunity."

4. The United States, like other countries, interprets the VCDR's provisions on residual immunity to be limited to the individual's "official acts" only.

5. It is the longstanding practice of the United States to request waivers of diplomatic immunity through diplomatic channels—that is, through a formal diplomatic note sent either by the U.S. Embassy to the Foreign Ministry in the foreign state's capital, or through a diplomatic note sent by the State Department to the foreign state's embassy in Washington D.C. This is the customary practice of States under the VCDR. The customary means of responding to such a request, which is also routinely followed by the United States and other countries, is to provide a diplomatic note expressly waiving or declining to waive immunity.

6. Diplomatic communications are used for correspondence between governments on matters of diplomatic immunity, as well as other official matters. When such communications are received, there generally would be no basis, and thus there is no practice between foreign ministries, for securing additional documentation to establish that such a note was properly authorized under the other state's internal regulations for approving such waivers.

7. Diplomatic notes often bear no signature and are simply initialed. *See generally* Department of State Foreign Affairs Handbook ("FAH"), 5 FAH-1 H610 (publicly available at: https://fam.state.gov/FAM/05FAH01/05FAH010610.html), attached hereto as Exhibit A. It is not unusual for diplomatic notes to be initialed by foreign ministry or embassy officials, rather than the Foreign Minister.

8. I am informed that, on or about October 18, 2017, representatives of the U.S. Embassy in Colombo, Sri Lanka, engaged in discussions with representatives of the Government of Sri Lanka to determine whether Sri Lanka would be willing to provide a waiver of any immunity that Jaliya Chitran Wickramasuriya continued to enjoy, for purposes of criminal proceedings in the U.S. District Court for the District of Columbia. The U.S. Embassy reported that the Government of Sri Lanka was willing to provide such a waiver. I am further informed that Prasad Kariyawasam, a Secretary at the Ministry of Foreign Affairs, was a regular interlocutor between Sri Lanka's Ministry of Foreign Affairs and the U.S. Embassy in Colombo at that time.

9. On October 20, 2017, the State Department sent a cable to the U.S. Embassy in Colombo, instructing the Embassy to deliver a diplomatic note to appropriate Sri Lankan officials in order to request such a waiver. *See* Cable No. 17 STATE 106114 and attached draft diplomatic note, attached hereto as Exhibit B.

10. On October 23, 2017, the U.S. Embassy in Colombo sent a response cable, indicating that it had transmitted the referenced diplomatic note to Sri Lanka, via the Sri Lankan Ministry of Foreign Affairs (Mahishini Colonne, Director General for U.S. and UN Affairs at the Sri Lankan Ministry of Foreign Affairs). *See* Cable No. 17 COLOMBO 748 and attached Diplomatic Note No. 756, attached hereto as Exhibit C.

3

11. On October 24, 2017, the U.S. Embassy in Colombo sent a subsequent cable indicating that it received a responsive diplomatic note from the Sri Lankan Ministry of Foreign Affairs, waiving any immunity enjoyed by the Defendant for purposes of the pending criminal investigation, including but not limited to testimonial immunity and immunity from the criminal, administrative and civil jurisdiction of the United States. *See* Cable No. 17 COLOMBO 750 and attached Diplomatic Note No. L/PO1/33, attached hereto as Exhibit D.

12. This exchange of diplomatic notes followed accepted diplomatic practice for formal state-to-state communications occurring through standard diplomatic channels.

13. Nearly three years later, on July 2, 2020, the Government of Sri Lanka sent a diplomatic note to the United States, in which the Government of Sri Lanka referred to its October 23, 2017 diplomatic note waiving any immunity enjoyed by the Defendant. *See* Diplomatic Note L/POL/33(VII), from Sri Lanka to the United States (July 2, 2020), attached hereto as Exhibit E; *see also* Def.'s MTD Ex. E (dkt. no. 36-6). The Government of Sri Lanka further stated that "no records are available in [the Presidential Secretariat and the Ministry of Foreign Affairs] to prove that [the] former President has issued such instructions." *Id.* The diplomatic note further indicated that the government believed the waiver was not legitimate and that the prior diplomatic note should be withdrawn. *Id.*

14. On August 19, 2020, the United States sent a response diplomatic note to Sri Lanka, indicating that the U.S. government viewed Sri Lanka's October 23, 2017 waiver to have been effective. *See* Diplomatic Note from the United States to Sri Lanka (August 19, 2020), attached hereto as Exhibit F; *see also* Def.'s MTD Ex. F (dkt. No. 36-7). Among other things, the U.S. government noted that international law requires that waivers be express, but it does not dictate the internal domestic process for waiver or provide that a waiver can only be made by a

head of state or government. *Id.* at 1-2. The U.S. government further indicated that Sri Lanka's October 23, 2017 waiver was express and appropriately communicated by the Sri Lankan Ministry of Foreign Affairs via diplomatic note on behalf of the Government of Sri Lanka. *Id.* at 2.

15. On September 8, 2020, the Government of Sri Lanka sent another diplomatic note reiterating the views expressed in its July 2, 2020 note. *See* Diplomatic Note from Sri Lanka to the United States, No. US/ADMIN/INQ 2020 (Sept. 8, 2020), attached hereto as Exhibit G. On October 9, 2020, the United States sent a response diplomatic note reiterating the views expressed in its prior note of August 19, 2020. *See* Diplomatic Note from the United States to Sri Lanka (Oct. 9, 2020), attached hereto as Exhibit H.

16. The State Department considers the waiver provided by the Government of Sri Lanka on October 23, 2017, which occurred in the context of ongoing discussions between U.S. and Sri Lankan authorities about the matter and was memorialized in an exchange of notes that followed standard diplomatic practice under the VCDR, to be valid and effective. Sri Lanka's waiver of any immunity Defendant continued to enjoy was communicated properly through diplomatic channels in a manner that comports with the State Department's longstanding understanding of and practice under the VCDR.

The above statements are true and accurate to the best of my knowledge and belief.

October 30, 2020

*[signature]*
Mary Catherine Malin
Assistant Legal Adviser
Office of Diplomatic Law and Litigation
Office of the Legal Adviser
U.S. Department of State