**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No. 1:18-120 (TSC) |
| | ) | |
| JALIYA CHITRAN WICKRAMASURIYA, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY IN SUPPORT OF MOTION TO DISMISS THE INDICTMENT
ON DIPLOMATIC IMMUNITY GROUNDS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 2

    I.  The Government Has Not Carried Its Burden to Establish Waiver of Ambassador
       Wickramasuriya's Diplomatic Immunity ........................................................... 2

        A. The Government Identifies No Facts that Could Establish a Valid Waiver of
           Immunity ........................................................................................................ 3

        B. The Court Should Reject the Government's Attempt to Impermissibly Shift Its Burden
           to the Defense ................................................................................................ 9

    II. Ambassador Wickramasuriya Is Entitled to Residual Diplomatic Immunity Under the
        Government's Cited Authorities .......................................................................... 11

    III. The Government Provides No Basis to Distinguish the Alleged Immigration Violation
         from the Charges of Money Laundering and Fraud in Determining Whether Immunity
         Bars the Case ...................................................................................................... 17

    CONCLUSION .......................................................................................................... 18

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Belhas v. Ya'alon*,
   515 F.3d 1279 (D.C. Cir. 2008) ....................................................................12, 14

*Brzak v. United Nations*,
   551 F. Supp. 2d 313 (S.D.N.Y. 2008) ...........................................................14, 15

*Brzak v. United Nations*,
   597 F.3d 107 (2d Cir. 2010) ................................................................................13

*Dale v. Colagiovanni*,
   443 F.3d 425 (5th Cir. 2006) .................................................................................6

*De Luca v. United Nations Org.*,
   841 F. Supp. 531 (S.D.N.Y. 1994) ......................................................................15

*Giraldo v. Drummond Co., Inc.*,
   808 F. Supp. 2d 247 (D.D.C. 2011) .....................................................................13

*Knab v. Republic of Georgia*,
   No. 97-cv-3118, 1998 WL 34067108 (D.D.C. May 29, 1998) .............................2, 9

*Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*,
   899 F.3d 1081 (9th Cir. 2018) ...............................................................................6

*SACE S.p.A v. Republic of Paraguay*,
   243 F. Supp. 3d 21 (D.D.C. 2017) .........................................................................6

*United States v. Al Sharaf*,
   183 F. Supp. 3d 45 (D.D.C. 2016) ............................................................. *passim*

*Velasco v. Gov't of Indon.*,
   370 F.3d 392 (4th Cir. 2004) .................................................................................6

## **Statutes and Other Authorities**

22 U.S.C. § 254d .................................................................................................1, 18

Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23 U.S.T. 3227 ...............1, 2, 3, 14

## INTRODUCTION

Defendant Jaliya Chitran Wickramasuriya, by and through his undersigned counsel, hereby submits this reply in support of his Motion to Dismiss the Indictment on Diplomatic Immunity Grounds.  The government has failed to carry its burden on either of the two issues in this case: (1) whether the government of Sri Lanka has waived its former Ambassador's residual diplomatic immunity from criminal prosecution, and (2) whether the acts alleged in the indictment fall within the scope of that immunity, which applies to "acts performed . . . in the exercise of [the former diplomatic agent's] functions as a member of the mission."  Vienna Convention on Diplomatic Relations ("VCDR"), art. 39.2, Apr. 18, 1961, 23 U.S.T. 3227.  As a result, the Court lacks jurisdiction over the matter, and it must dismiss the indictment pursuant to 22 U.S.C. § 254d.

The government of Sri Lanka has determined that the purported waiver issued on October 23, 2017 by a former Sri Lankan government official—the sole basis for the government's claim that Sri Lanka has waived Ambassador Wickramasuriya's immunity—was and is invalid.  Sri Lanka reached this conclusion following a thorough internal review.  Because the State Department has questioned the basis for Sri Lanka's conclusion that the waiver was invalid, Sri Lanka recently transmitted on November 9 a new diplomatic note and supporting Aide Memoire to the U.S. Embassy in Colombo, explaining the process and reasons for its determination that the waiver was illegitimate.  These documents are attached to the **Supplemental Declaration of Shavindra Fernando ("Suppl. Fernando Decl.")** as **Exhibits H and I**.

Regarding the scope and applicability of residual diplomatic immunity, the government relies on the same key case identified by Ambassador Wickramasuriya, and it appears to agree on the basic standard.  *See* MTD Opp. at 9-13 (applying *United States v. Al Sharaf*, 183 F. Supp. 3d 45 (D.D.C. 2016)).  The parties differ, however, in that the government reads a "lack of

wrongfulness" requirement into the analysis of whether alleged acts were "performed . . . in the exercise of [the former diplomatic agent's] functions as a member of the mission." VCDR 39.2. This interpretation runs directly contrary to the case law, and it would defeat the purpose of residual immunity by merging the threshold immunity inquiry with the merits of the case.

Finally, there are outstanding *Brady* and discovery requests in this case, many of which are highly relevant to the immunity issues. Ambassador Wickramasuriya sent these requests to the government on September 23, 2020, anticipating that he would receive the information in time to use in either his motion or his reply. The government produced an initial set of seven documents on September 29, 2020. Although scheduled briefing on the immunity issues is now concluding, Ambassador Wickramasuriya reserves the right to supplement or renew his motion to dismiss based on the content of the government's productions.

## ARGUMENT

### I.   The Government Has Not Carried Its Burden to Establish Waiver of Ambassador Wickramasuriya's Diplomatic Immunity

As the party asking the Court to assert jurisdiction, the government has the burden to show that jurisdiction is proper notwithstanding Ambassador Wickramasuriya's entitlement to residual diplomatic immunity for "acts performed . . . in the exercise of his functions as a member of the mission." *See Knab v. Republic of Georgia*, No. 97-cv-3118, 1998 WL 34067108, at *2 (D.D.C. May 29, 1998) (citing *Hellenic Lines, Inc. v. Moore,* 345 F.2d 978, 980 n.3 (D.C. Cir. 1965)); *see also* MTD at 12. The government does not dispute this allocation of burden, nor does it contest that the sending state—*not* the receiving state—is the holder of an individual diplomat's immunity. *See* MTD Opp. at 3. Nonetheless, the government largely ignores its affirmative obligation, focusing instead on perceived deficiencies and omissions in Ambassador Wickramasuriya's

arguments.  *See* MTD Opp. at 16-27.  This strategy amounts to an impermissible attempt to transfer the burden on waiver from the government to the defense, and the Court should reject it.

### A. The Government Identifies No Facts that Could Establish a Valid Waiver of Immunity

The government of Sri Lanka—the holder of its former Ambassador's immunity and the only party that may waive it, *see* VCDR art. 32.1—has confirmed repeatedly that the purported waiver is invalid.  Rather than engaging with the basis for that conclusion, however, the government offers general statements about "standard diplomatic practice" and otherwise relies exclusively (and misleadingly) on a single stage of Ambassador Wickramasuriya's legal proceedings in Sri Lanka: a Court of Appeal decision that has been overtaken by subsequent events.  These arguments are insufficient to carry the government's burden to establish a valid waiver of immunity.

*Relevant facts*

The relevant facts are uncontroverted.  On October 23, 2017, the U.S. government requested waiver of Ambassador Wickramasuriya's immunity.  *See* **Decl. of Shavindra Fernando ("Fernando Decl.") Ex. B**, Document No. L/POL/33 (Oct. 23, 2017) (referencing Note Verbale No: 756 from the United States, dated October 23, 2017); **Suppl. Fernando Decl. Ex. I**, Aide Memoire, ¶ 3.  That same day—indeed, only hours later—a Sri Lankan official transmitted a document captioned "L/POL/33" to U.S. officials, purporting to waive Ambassador Wickramasuriya's immunity.  **Suppl. Fernando Decl. Ex. I**, Aide Memoire, ¶¶ 4, 17.  The document was signed by Prasad Kariyawasam, the then-Secretary to the Foreign Ministry, **Fernando Decl.** ¶ 6, who later stated in Sri Lankan court proceedings that he was the official responsible for the transmission of the note, **Suppl. Fernando Decl. Ex. I**, Aide Memoire, ¶ 6;

MTD Opp. at 19.[1]  Ambassador Wickramasuriya promptly challenged the purported waiver in the Sri Lankan courts, filing his initial case in December 2017.  **Fernando Decl.** ¶ 7; **Suppl. Fernando Decl. Ex. I**, Aide Memoire, ¶ 5.  Those proceedings have been repeatedly delayed and postponed between 2018 and present, due to both heavy judicial caseloads and the effects of the global pandemic, but the matter remains pending before the Sri Lankan Supreme Court.  **Fernando Decl.** ¶¶ 8-9, 11; **Suppl. Fernando Decl. Ex. I**, Aide Memoire, ¶ 7.[2]

Earlier this year, the Sri Lankan Presidential Secretariat (i.e., the office of the President) and Foreign Ministry conducted a review of the purported waiver.  **Fernando Decl.** ¶ 14; **Suppl. Fernando Decl. Ex. I**, Aide Memoire, ¶¶ 9-10, 13-18.  Based on this review, Sri Lanka concluded that the purported waiver was illegitimate.  **Suppl. Fernando Decl. Ex. I**, Aide Memoire, ¶¶ 16, 19-21.  The Sri Lankan Foreign Ministry communicated this official conclusion to the United States on July 2, September 8, and, most recently, November 9, 2020.  **Fernando Decl. Ex. E**, Diplomatic Note No. L/POL/33(VII) (July 2, 2020); **Fernando Decl. Ex. G**, Diplomatic Note TPN No. US/ADMIN/INQ/2020 from the Embassy of Sri Lanka to the U.S. Department of State (Sept. 8, 2020); **Suppl. Fernando Decl. Ex. H**, Diplomatic Note No. L/POL/33(IV) (Nov. 9, 2020).

The November 9 note, which is not part of the existing record, reads in relevant part:

> The Foreign Ministry has further honour to inform that the Government of Sri Lanka has not, at any time, properly waived the diplomatic immunity of Mr. Jaliya Chithran Wickramasuriya as the former Ambassador of Sri Lanka to the United States.

---

[1] The opposition refers to Mr. Kariyawasam as Secretary *of* the Ministry of Foreign Affairs, MTD Opp. at 19, but that is incorrect.  Mr. Kariyawasam was Secretary *to* the Foreign Ministry, a position distinct from (and subordinate to) the cabinet-level position of Minister.  *See* **Fernando Decl.** ¶ 5.

[2] At the time Ambassador Wickramasuriya filed his motion, the next court date in the Supreme Court case was set for November 2, 2020, **Fernando Decl.** ¶ 11, but those proceedings were not held due to new restrictions related to COVID-19.

4

> As such, the Foreign Ministry wishes to reiterate its request to avoid using the contents of Ministry Note Verbale No. L/POL/33 dated 23rd October 2017 to subject Mr. Wickramasuriya to the criminal, civil or administrative proceedings that relates to the exercise of his functions as Ambassador of Sri Lanka to the United States.

**Suppl. Fernando Decl. Ex. H**, Diplomatic Note No. L/POL/33(IV) (Nov. 9, 2020).

> The Aide Memoire provides additional detail as follows:

> Pursuant to a careful review of correspondence available at both the Presidential Secretariat and at the Foreign Ministry, the Presidential Secretariat has been able to verify that *no formal instructions from the Presidential Secretariat has been sent to Secretary to the Foreign Ministry by Secretary to the former President Maithripala Sirisena to withdraw diplomatic immunity of Mr. Wickramasuriya*. Such an instruction is considered as a mandatory requirement in a case as serious as this and is expected to be handled in a manner as highlighted in Section 3:8 of Chapter XXVII of the Establishment Code of Sri Lanka . . . Taking the above into consideration, Secretary to the President by his letter dated 2nd July 2020, said that *waiver of diplomatic immunity enjoyed by Mr. Jaliya Wickramasuriya as former Ambassador of Sri Lanka to the United States is not legitimate* and therefore to take necessary action to withdraw Foreign Ministry Note Verbale No. L/POL/33 dated 23rd October 2017.

**Suppl. Fernando Decl. Ex. I**, Aide Memoire, ¶¶ 16, 19 (emphases added).

*Standard diplomatic practice*

The government relies heavily on the concept of "standard diplomatic practice," but the unusual circumstances of this case—in which a foreign government asserts that a former Foreign Ministry official used authorized diplomatic channels to act beyond the scope of his authority—are far from "standard."  In light of these circumstances, the Court should evaluate the validity of the waiver on the basis of the well-developed record, rather than deferring to a presumption of regularity in diplomatic communications.   Indeed, crediting such a presumption would be especially inappropriate here, where one of the sovereign parties to the communications has already determined that they were irregular and unauthorized.  *See, e.g.*, **Suppl. Fernando Decl. Ex. I**, Aide Memoire, ¶ 21 ("The Foreign Ministry . . . has taken action to withdraw the 23rd

October 2017 diplomatic note, as the Ministry were of the view that it had not been issued legitimately."). The government's cases are not to the contrary, as none involve circumstances remotely similar those present here. *See* MTD Opp. at 19-20.[3]

The timing and process irregularities in this case are potentially significant. Ambassador Wickramasuriya has long maintained that a waiver issued the same day it was requested could not possibly have complied with the relevant internal procedures and provisions of Sri Lankan law, particularly with respect to a matter as important as the waiver of a former Ambassador's immunity. The Sri Lankan government reached the same conclusion after its internal review. In its Aide Memoire, the government explains to the State Department:

> Review of records in this regard has revealed that the Foreign Ministry Note Verbale No. L/POL/33 dated 23rd October 2017 by which diplomatic immunity of Mr. Wickramasuriya was supposedly waived has been issued **on the same date** of receipt of Note Verbale No. 756 from the US Embassy in Colombo, further affirming that the proper internal processes were not followed in securing necessary approval from the former President through Secretary to the President. ***This period is too short to allow for the required internal procedures, especially in a matter of such importance.***

**Suppl. Fernando Decl. Ex. I**, Aide Memoire, ¶ 17 (second emphasis added).

---

[3] As explained in Ambassador Wickramasuriya's motion, U.S. courts have held repeatedly in the context of the Foreign Sovereign Immunities Act ("FSIA") that a foreign official must have actual authority to waive immunity on a sovereign's behalf. *See SACE S.p.A v. Republic of Paraguay*, 243 F. Supp. 3d 21, 24 (D.D.C. 2017); *Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*, 899 F.3d 1081, 1088-89 (9th Cir. 2018); *Velasco v. Gov't of Indon.*, 370 F.3d 392, 400 (4th Cir. 2004); *Dale v. Colagiovanni*, 443 F.3d 425, 429 (5th Cir. 2006). The government seeks to distinguish these cases on the basis that they involve a "different legal regime," MTD Opp. at 20, but they address the precise question at issue here: when does a foreign official have the authority to effect a waiver of immunity on behalf of a foreign sovereign, such that the waiver constitutes an act of the "foreign state" (under the FSIA) or an act of the "sending state" (under the VCDR)? The government identifies no analogous case law in the diplomatic immunity context, and Defendant is not aware of any.

Ambassador Wickramasuriya raised this point directly in his motion, MTD at 4, 16-17, yet the government has failed to provide any clear explanation—let alone evidence—to reconcile the irregular circumstances of the purported waiver with the "standard diplomatic practice" upon which it relies. Although the State Department's declaration describes a handful of country-to-country exchanges between October 18 and October 24, it does not identify the relevant participants or processes (e.g., whether there was informal outreach directly from U.S. prosecutors to Sri Lankan officials); does not explain the same-day turnaround (which is especially baffling in light of the time difference between Washington, D.C. and Colombo); and is not based on personal knowledge. *See* Declaration of Mary Catherine Malin ¶ 8 ("I am informed that . . . I am further informed that . . . ."). Indeed, the purported waiver deviates from "standard diplomatic practice" in at least two respects: Sri Lanka has never waived the diplomatic immunity of a sitting or former Ambassador, and Sri Lanka has never waived the immunity of any diplomatic agent with regard to criminal prosecution in the United States. **Suppl. Fernando Decl. Ex. I**, Aide Memoire, ¶ 12.

Although a showing of *regular* timing and processes would not be enough to establish the validity of a waiver Sri Lanka has disclaimed, the presence of irregularities supports Ambassador Wickramasuriya's claim that the supposed waiver is not, and never was, a legitimate and authorized waiver by the sending state. He is entitled to the requested *Brady* and discovery information, and the Court should reject the government's reliance on "standard diplomatic practice" in light of the unusual circumstances of this case.

*Sri Lankan Court of Appeal decision*

The government places heavy reliance on a Sri Lankan Court of Appeal decision from March 2018, which has been superseded by the events discussed above.[4]  According to the government, in early 2018, the Court of Appeal rejected Ambassador Wickramasuriya's argument that the October 2017 waiver was "not a decision made by H.E. the President."  MTD Opp. at 19. In reaching this conclusion, the court considered an affidavit from Mr. Kariyawasam in which he claimed that he had acted "pursuant to instructions he had received from His Excellency the President."  *Id.*

The Court of Appeal decision, which is currently under review by the Sri Lankan Supreme Court, was based on the affidavit of Mr. Kariyawasam and did not reflect the subsequent internal investigation by the government.  The Presidential Secretariat and Foreign Ministry expressly considered the Kariyawasam affidavit in their review but concluded that Mr. Kariyawasam had *not* acted at the instruction of the President and that the purported waiver was therefore invalid. **Suppl. Fernando Decl. Ex. I**, Aide Memoire, ¶¶ 6, 14-16.   In addition, Ambassador Wickramasuriya appealed the decision of the Court of Appeal to the Sri Lankan Supreme Court in April 2018, and the case has been pending before that court since.  **Fernando Decl. ¶¶ 8-9, 11.** Although those proceedings are ongoing, the Sri Lankan Attorney General's Department has taken steps to inform the court of the government's position that the purported note of October 23, 2017 "had not been issued legitimately."  **Suppl. Fernando Decl. Ex. I**, Aide Memoire, ¶ 21.

In light of these developments between March 2018 and present, the Court of Appeal's decision is outdated and irrelevant.

---

[4] The government erroneously identifies the date of this decision as March 29, 2019.  MTD Opp. at 18.

**B. The Court Should Reject the Government's Attempt to Impermissibly Shift Its Burden to the Defense**

In the absence of any evidence to support its waiver claims, the government seeks to poke holes in Ambassador Wickramasuriya's evidence and argues that he should have provided additional information or authorities to support his position. He has no such obligation. Although the documents attached to the motion are more than sufficient to show the absence of a valid waiver, the question is whether the *government*, as the "party asking the Court to assert jurisdiction," has established that the case may proceed. *Knab v. Republic of Georgia*, No. 97-cv-3118, 1998 WL 34067108, at *2 (D.D.C. May 29, 1998) (citing *Hellenic Lines, Inc. v. Moore,* 345 F.2d 978, 980 n.3 (D.C. Cir. 1965)). The Court should reject the government's attempt to transfer its burden to the defense.

In any case, the government's efforts to shift the burden are contrary to the facts, for the following reasons.

First, the government asserts that "the entire basis of the Defendant's argument that the waiver was invalid is that the Government of Sri Lanka has not located records that indicate that the former President of Sri Lanka authorized the waiver." MTD Opp. at 17. This is incorrect. Sri Lanka's diplomatic note dated September 8, 2020 clearly states: "The relevant Sri Lankan authorities continue to hold the view that Note Verbale No. L/POL/33 dated 23rd October 2017, is not valid and therefore, diplomatic immunity of Mr. Wickramasuriya has never been waived, *as due internal process has not been followed prior to issuing the said Note*." **Fernando Decl. Ex. G**, Diplomatic Note TPN No. US/ADMIN/INQ/2020 from the Embassy of Sri Lanka to the U.S. Department of State (Sept. 8, 2020) (emphasis added). The Aide Memoire provides additional detail about the Sri Lankan government's review of the purported waiver, as well as the official

conclusions it communicated to the United States.  **Suppl. Fernando Decl. Ex. I**, Aide Memoire, ¶¶ 9-23.

Second, the government argues that "Defendant offers no support . . . for drawing the conclusion that <u>only</u> the President can order a waiver of immunity."  MTD Opp. at 17.  To the contrary, the Fernando Declaration addresses this point directly, **Fernando Decl. ¶¶** 15-16, and the Aide Memoire confirms the substantive principle that "if diplomatic immunity enjoyed by Ambassadors/High Commissioners is to be waived, such instructions should . . . be issued by His Excellency the President," **Suppl. Fernando Decl. Ex. I**, Aide Memoire, ¶ 11.

Third, the government contends that "Defendant provides no explanation for why it took nearly three years for the Government of Sri Lanka to discover that the waiver note was purportedly invalid."  MTD Opp. at 18.  As Mr. Fernando explained, however, Ambassador Wickramasuriya's case before the Sri Lankan Supreme Court has been repeatedly postponed, **Fernando Decl. ¶** 9, and the Sri Lankan government did not open its review of the potential political victimization of certain public officials until January 2020, *id.* ¶ 12.  The Aide Memoire explains: "Th[e] Commission was formed at the direction of H.E. the President in January 2020 and was not available to address Mr. Jaliya Wickramasuriya's claims prior to that time."  **Suppl. Fernando Decl. Ex. I**, Aide Memoire, ¶ 8.  The Aide Memoire further explains that, although the Supreme Court has not yet had occasion to rule on the claims, "[t]he Foreign Ministry has taken action to inform the Supreme Court of Sri Lanka, through the Attorney General's Department that it has taken action to withdraw the 23rd October 2017 diplomatic note, as the Ministry were of the view that it had not been issued legitimately."  *Id.* ¶ 21.  Ambassador Wickramasuriya could not control whether the Supreme Court postponed his case or the prior Administration investigated his

claims between 2017 and early 2020, but he filed his claims promptly and has diligently pursued relief. **Fernando Decl. ¶ 7-11; Suppl. Fernando Decl. Ex. I**, Aide Memoire, ¶¶ 5-9.

Fourth, the government suggests that Ambassador Wickramasuriya lacks a basis to associate Mr. Kariyawasam with the purported waiver of October 23, 2017, MTD Opp. at 21 n.9, but the government's own authorities identify Mr. Kariyawasam as the responsible official. Indeed, just a few pages earlier, the government describes an affidavit in which Mr. Kariyawasam claimed to have issued the October 23 note after receiving instructions to waive Ambassador Wickramasuriya's immunity from the President of Sri Lanka. MTD Opp. at 19. In any case, the Fernando Declaration explains the relevant events and Mr. Kariyawasam's role in them, **Fernando Decl. ¶¶ 5-6**, and the Aide Memoire confirms that the Sri Lankan government's review "has been able to verify that no formal instructions from the Presidential Secretariat has been sent to Secretary to the Foreign Ministry [then Mr. Kariyawasam] by Secretary to the former President," notwithstanding the Kariyawasam affidavit, **Suppl. Fernando Decl. Ex. I**, Aide Memoire, ¶¶ 6, 14-16.

Finally, this Court is well-equipped to review the evidence and determine whether the government has satisfied its burden, and it should decline the government's invitation to "defer to the State Department's determination" based on the vague foreign policy grounds articulated at MTD Opp. 24-25 & n.10, when that determination clearly is not supported by the factual record. Courts routinely consider sovereign waiver issues without executive branch assistance, *see* n.3, *supra*, and the government's cited cases have no bearing on the specific issues before the Court.

## II. Ambassador Wickramasuriya Is Entitled to Residual Diplomatic Immunity Under the Government's Cited Authorities

Although the government insists that "Defendant's motion mischaracterizes the standard under VCDR Article 39(2)," MTD Opp. at 10, there appears to be little daylight between the

government and Ambassador Wickramasuriya.  Both parties read the language of Article 39.2 to distinguish between acts that fall within a diplomatic agent's official role and acts that are "peripheral" or "incidental" to it, *compare* MTD at 19-20 *with* MTD Opp. at 9-11, and both rely primarily on *United States v. Al Sharaf*, 183 F. Supp. 3d 45 (D.D.C. 2016), *compare* MTD at 19-23 *with* MTD Opp. at 9-16.  The parties vigorously disagree, however, on the proper application of this standard to the allegations in the indictment.  In particular, the government misconstrues the role of wrongfulness in the immunity analysis, which causes it to misread *Al Sharaf*.

*Every* criminal or civil case involves allegations of wrongful conduct.  Thus, courts have recognized across immunity contexts that the alleged wrongfulness of an act does not affect the immunity analysis.  In *Belhas v. Ya'alon*, for example, the D.C. Circuit applied the FSIA to a suit brought under the Alien Tort Statute and Torture Victim Protection Act against a retired Israeli general.[5]  515 F.3d 1279, 1281-82 (D.C. Cir. 2008).  The Court held that the general was entitled to immunity because "his actions were within the authority given to him by the State of Israel." *Id.* at 1284.  In a concurring opinion, Judge Williams explained that plaintiffs' proposed exception to immunity for unlawful acts would eviscerate its protections by "merg[ing] the merits of the underlying claim with the issue of immunity": "if [the general's] actions *were* torture and extrajudicial killing, then they were necessarily unauthorized and he has no claim to immunity; if they *were not* torture and extrajudicial killing, he would enjoy immunity."  *Id.* at 1292 (Williams, J.).  Thus, "immunity could be determined only at the moment of resolution on the merits, at which point it would commonly be irrelevant."  *Id.*

---

[5] Since *Belhas*, courts including the D.C. Circuit have recognized that suits against foreign officials are properly considered under the doctrine of common-law foreign-official immunity, rather than the FSIA, but the specific source of immunity is immaterial to the analysis here.

Likewise, in *Giraldo v. Drummond Co., Inc.*, Judge Bates rejected an "illegal acts" or "*jus cogens*" exception to foreign-official immunity based on the D.C. Circuit's reasoning in *Belhas*, explaining: "Not only would such a rule place a strain upon our courts and our diplomatic relations, but it would also eviscerate any protection that foreign official immunity affords."  808 F. Supp. 2d 247, 250 (D.D.C. 2011).  To deny foreign-official immunity based on allegations of illegal acts, Judge Bates observed, "merges the merits of the underlying claim with the issue of immunity," forcing defendants to litigate the legality of the alleged acts at the immunity stage.  *Id.* (quoting *Belhas*, 515 F.3d at 1292-93 (Williams, J., concurring)).  As a result, "there will effectively be no immunity" for foreign officials, since "'sovereign immunity is an immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits.'"  *Id.* at 250-51 (quoting *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 443 (D.C. Cir. 1990)).

As courts have recognized, these principles apply equally in the context of residual immunity.  *See Brzak v. United Nations*, 597 F.3d 107, 113 (2d Cir. 2010) (explaining that courts must proceed "without judging whether the underlying conduct actually occurred, or whether it was wrongful"); *accord Al Sharaf*, 183 F. Supp. 3d at 52 (quoting *Brzak*).[6]  "If the rule were otherwise, routine allegations of wrongful conduct or improper motive would defeat the immunity" and "'the solid protection' that 'Congress intended to afford' . . . would indeed be evanescent."

---

[6] The government describes the cited employment discrimination cases as "inapposite" and "clearly distinguishable," MTD Opp. at 14, but the court in *Al Sharaf* relied on the same cases, and the government relies on *Al Sharaf*.

*Brzak v. United Nations*, 551 F. Supp. 2d 313, 320 (S.D.N.Y. 2008) (quoting *Donald v. Orfila*, 788 F.2d 36, 37 (D.C. Cir. 1986)).

The government's approach to wrongfulness runs contrary to this well-established case law. *See, e.g.*, MTD Opp. at 10-11 ("Residual immunity applies only with respect to the 'official' acts that the individual performed, not private, criminal acts like the ones alleged in the indictment."); *id.* at 11 ("While actions legitimately related to the purchase of a new embassy building would very likely be considered part of the official functions of a diplomat, the fraud and money laundering at issue here cannot be considered part of the Defendant's official diplomatic functions."); *id.* at 11 ("The Defendant cannot plausibly argue that his alleged commission of wire fraud and money laundering in order to reap personal profit . . . were part of his 'official' diplomatic functions performed on behalf of or imputable to the Government of Sri Lanka.").   Under the government's theory, the sole way for Ambassador Wickramasuriya to establish his entitlement to immunity is for him to prove his innocence at trial.   This approach would defeat the purpose of immunity, and it is not the law.

The government's claim that "Defendant's official responsibilities regarding the purchase of a new embassy building did not require, and were not furthered in any way by" the alleged crimes is based on the same faulty premise.  MTD Opp. at 13.  Ambassador Wickramasuriya does not argue that he is entitled to immunity because wire fraud and money laundering were part of his official role, any more than the outcome in *Brzak* required a finding that a senior U.N. official's duties included sexual harassment or the outcome in *Belhas* depended on the conclusion that Israeli military officials' duties include the torture and killing of civilians.  *See Brzak*, 551 F. Supp. 2d at 320; *Belhas*, 515 F.3d at 1287-88.   Rather, immunity applies when the alleged conduct was "performed . . . in the exercise of [defendant's] functions," VCDR art. 39.2, regardless of whether

14

it was "wrongful" or constituted an "abuse of authority in the workplace," *Brzak*, 551 F. Supp. 2d at 320; *see also De Luca v. United Nations Org.*, 841 F. Supp. 531, 535 (S.D.N.Y. 1994) (official-functions immunity "can[not] be defeated by allegations of illegal conduct").

The government's misunderstanding of this fundamental point explains why it misses the key distinction in *Al Sharaf* (and with it the fact that *Al Sharaf* is a favorable authority for Ambassador Wickramasuriya, not the government). Under the case law described above, the question is not whether the alleged conduct is lawful or unlawful—it is whether the conduct occurs "in the exercise of" the official role or is distinct from it. Courts often frame this analysis in terms of whether the alleged conduct is "peripheral" or "incidental" to the former diplomatic agent's official functions. In *Al Sharaf*, for example, the court emphasized that the former Kuwait Health Office official had been "charged with conspiring to launder the ill-gotten funds by creating shell companies, opening bank accounts for the shell companies and withdrawing cash from those bank accounts to conceal the funds' source—precisely those charged acts that are not 'inextricably tied' to her professional responsibilities." 183 F. Supp. 3d at 57. Although the defendant allegedly had used aspects of her position to "facilitate" the crimes, the court determined that the alleged activity of "creating and using shell companies and bank accounts to conceal her transactions in embezzled funds" was distinct from and peripheral to her official role. *Id.*; *see also id.* at 52 ("[W]hether the defendants enjoyed residual immunity . . . depends on whether the claims 'relate to' acts taken in the course of the diplomat's official conduct, or instead whether the claims involve private conduct that was 'entirely peripheral' to those official functions." (citing Def.'s R&R Resp. at 10.)). By contrast, the court expressly distinguished scenarios in which a defendant is charged with stealing or embezzling from an employer in the course of official duties, which would fall within the scope of diplomatic immunity. *Id.* at 53 ("The defendant . . . is not charged with stealing

her employer's funds, to which she had authorized access by virtue of her position."); *id.* at 57 ("In other words, the defendant is not charged with embezzlement from her employer of the medical claims payments.").    These examples correspond to the alleged facts of Ambassador Wickramasuriya's case.

There is another important difference between *Al Sharaf* and this case: in *Al Sharaf*, the sending state had expressly denied that the alleged activities were performed in the course of defendant's official duties.  *Id.* at 53 n.7 (explaining Kuwait's position that "the activities set forth in the Attachment to the aforesaid Diplomatic Note [were] . . . not performed in connection with, or in the furtherance of, the duties or official functions of a diplomatic employee").  Sri Lanka has taken no such position here.

Applying these principles to the facts, it is clear that Ambassador Wickramasuriya is entitled to residual diplomatic immunity.  The government does not dispute that he was serving as Sri Lanka's Ambassador to the United States at the time of the embassy purchase or that he participated in that transaction in his capacity as Ambassador.  Rather, the government's theory appears to depend on the premise that "fraud and money laundering" are always "private, criminal acts" and never "official" ones.  MTD Opp. at 10-11.  This misguided view of the law would merge the immunity determination with the merits, defeating the purpose of immunity.

Finally, the government argues that the Court should "defer" to the State Department's interpretation of Article 39.2, MTD Opp. at 10 & n.4, 15-16, but there is nothing to defer *to*.  The parties agree on the applicable VCDR provision, the basic standard for residual diplomatic immunity, and even the key precedent from this District.  All that remains is the application of this standard to the facts alleged in the indictment, a matter well within the competence of the Court.  *See Al Sharaf*, 183 F. Supp. 3d at 53 (identifying the court's task as "to scrutinize the charged acts

objectively and evaluate whether they fall within the defendant's official functions subject to her residual immunity").

### III. The Government Provides No Basis to Distinguish the Alleged Immigration Violation from the Charges of Money Laundering and Fraud in Determining Whether Immunity Bars the Case

In his motion, Ambassador Wickramasuriya explained that he considered the same immunity analysis to apply to the substantive counts in the indictment (wire fraud and money laundering) as to the "false statement in immigration application" count arising from the same events. MTD at 10-11; *see* Indictment ¶ 69 (alleging that Defendant made a false statement in an immigration application when he stated that he had never knowingly committed any crime of moral turpitude for which he had not been arrested). The government addresses this issue in a single footnote, observing that "whether the Defendant could be prosecuted for embezzling money from the Government of Sri Lanka due to an alleged defense of residual immunity, has no bearing on whether he lied on his I-495 immigration form, when he denied committing a crime of moral turpitude for which he had never been arrested." MTD Opp. at 5 n.1.

Defendant rejects this claim. The "false statement in immigration application" charge is premised on the commission of crimes alleged in counts 1-4, and this Court's determination on immunity would fairly extend to either all or none of the alleged acts.

Separate from the merits, however, the government's undeveloped footnote is far from sufficient to justify a ruling on this ground. This Court should deem the argument waived. Alternatively, if further consideration is required, the Court should order supplemental briefing by the parties.

**CONCLUSION**

Because Sri Lanka has not waived Ambassador Wickramasuriya's diplomatic immunity, and because the indictment relates to acts that he allegedly performed in the exercise of his functions as Ambassador from Sri Lanka to the United States, Ambassador Wickramasuriya is entitled to residual diplomatic immunity from criminal prosecution. Accordingly, this Court should dismiss the indictment pursuant to 22 U.S.C. § 254d.

Dated: November 16, 2020

Respectfully submitted,

/s/ Amy Jeffress
Amy Jeffress (DC Bar No. 449258)
John B. Bellinger, III (DC Bar No. 405059)
Kaitlin Konkel (DC Bar No. 1021109)
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Telephone: (202) 942-5000
Fax: (202) 942-5999
amy.jeffress@arnoldporter.com
john.bellinger@arnoldporter.com
kaitlin.konkel@arnoldporter.com

Danny Onorato (DC Bar No. 480043)
Stuart Sears (DC Bar No. 977144)
Schertler & Onorato LLP
901 New York Avenue NW
Washington, DC 20001
Telephone: (202) 628-4199
Fax: (202) 628-4177
donorato@schertlerlaw.com
ssears@schertlerlaw.com

*Attorneys for Jaliya Chitran Wickramasuriya*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 16, 2020, I caused the foregoing to be electronically

filed using the CM/ECF system, which will notify all counsel of record of the filing.


/s/ Amy Jeffress