IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | No. 18-CR-120 (TSC) |
| | : | |
| v. | : | |
| | : | Violations: |
| **JALIYA CHITRAN WICKRAMASURIYA,** | : | |
| | : | 18 U.S.C. § 371 |
| Defendant. | : | (Conspiracy) |
| | : | |
| | : | |
| | : | |

## SUPERSEDING INFORMATION

### COUNT ONE
(Conspiracy to Commit Wire Fraud)

The United States charges that:

From in or around late-2012 to November 2013, within the District of Columbia and elsewhere, the defendant JALIYA CHITRAN WICKRAMASURIYA, and co-conspirators not charged herein, did unlawfully, knowingly and intentionally combine, conspire, confederate and agree together, with each other, and with others known and unknown, to commit wire fraud, that is: having devised and intending to devise a scheme to defraud the government of Sri Lanka during the purchase of the Sri Lankan embassy, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, did transmit or cause to be transmitted by means of wire communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, all in violation of Title 18, United States Code, Section 371 and Title 18, United States Code, Section 1343.

**Introduction**

1. Between 2008 and 2014, the defendant served as Ambassador from the Democratic Socialist Republic of Sri Lanka ("Sri Lanka") to the United States.

2. Between in or about 2000 and 2012, the Sri Lankan embassy was located at 2148, Wyoming Ave., N.W., Washington D.C., 20008.

3. In 2012, the defendant was involved in selecting 3025 Whitehaven St., N.W., Washington, D.C. 20008 as the location for the new embassy.

4. In 2013, the defendant caused official funds from Sri Lanka to be wired to a HSBC bank account in Washington, D.C., which were used to purchase the new embassy.

5. "Embassy Consultant" was a lawyer and consultant who was an associate of the defendant and who owned and operated "Embassy Consultant Company A" and "Embassy Consultant Company B." Embassy Consultant Company A and Embassy Consultant Company B played no official role in the purchase of the embassy.

6. "Embassy Realtor" worked for "Buyer's Real Estate Company," which acted as the realtor for the government of Sri Lanka in the embassy purchase.

7. "Seller's Real Estate Company" was the real estate company that represented the sellers of 3025 Whitehaven Street, N.W.

8. "Closing Attorney" acted as the closing attorney for the government of Sri Lanka when purchasing 3025 Whitehaven Street, N.W.

9. "Title Company," was a title company that conducted the title check of 3025 Whitehaven Street, N.W. for the government of Sri Lanka.

10. "Sri Lankan Company" was incorporated in Sri Lanka. The Sri Lankan Company played no official role in the purchase of the embassy.

11. A HUD-1 settlement statement ("HUD-1 form") was a standard form used to itemize services and fees charged as part of the purchase of real estate.

### Financial Institutions and Accounts

12. HSBC was a financial institution, as defined in Title 18, United States Code, Sections 20 and 1956(c)(6).

13. The defendant was one of the signatories over an account in the name of the Embassy of the Republic of Sri Lanka at HSBC, with account number ending in 1229 (the "Sri Lankan Government Bank Account").

### Goal of the Conspiracy

14. It was a goal of the conspiracy that defendant, JALIYA CHITRAN WICKRAMASURIYA, along with other conspirators, would defraud the government of Sri Lanka during the purchase of the Sri Lankan embassy by inflating the price of the real estate transaction and arranging for these additional funds to be provided by the government of Sri Lanka, thereby obtaining money by means of materially false and fraudulent pretenses, representations, and promises.

### Manner and Means

15. It was part of the scheme that:

<u>Embassy Purchase</u>

16. In or about October 2012, the Sri Lankan government decided to purchase the property at 3025 Whitehaven Street, N.W., which would act as the new Sri Lankan embassy in Washington, D.C.

17. The agreed-upon purchase price for the property at 3025 Whitehaven Street N.W., was $6.25 million.

18. The government of Sri Lanka appropriated $6.6 million for the purchase of the embassy. The HUD-1 form prepared for this sale referenced the following payments to be made from the funds provided by the government of Sri Lanka:

    a. $187,500.00 commission payment to Seller's Real Estate Company;

    b. $187,500.00 commission payment to Buyer's Real Estate Company; and

    c. $332,027.35 payment which represented unaccounted for excess funds on the buyer's side of the form.

19. On or about January 12, 2013, the defendant prepared and signed a memorandum in which he instructed the Title Company and the Closing Attorney to disburse the unaccounted for $332,027.35 in funds to two third parties: $82,000 to Embassy Consultant Company A and $250,000 to the Sri Lankan Company, both of which had no role in the real estate transaction.

20. On or about January 15, 2013, the defendant, using a non-embassy email account, emailed this memorandum, containing the disbursement instructions for the excess funds, to the Closing Attorney.

21. On or about January 16, 2013, the closing for the purchase of the embassy occurred in the Closing Attorney's Washington, D.C. office. The defendant did not attend the closing.

22. The HUD-1 form at closing referenced the following payments:

    a. $187,500.00 to Buyer's Real Estate Company;

    b. $187,500.00 to Seller's Real Estate Company;

    c. $82,027.35 to Embassy Consultant Company A; and

    d. $250,000.00 to Sri Lankan Company.

23. The disbursements to Buyer's Real Estate Company and Seller's Real Estate Company were legitimate commission payments to the respective realtors.

24. The disbursements to Embassy Consultant Company A and the Sri Lankan Company were not authorized by the government of Sri Lanka.

25. On or about January 17, 2013, the Title Company successfully wired $82,027.35 to Embassy Consultant Company A.

26. On or about January 17, 2013, the Title Company attempted to wire $250,000.00 to the Sri Lankan Company; however, the wire was unsuccessful because an intermediary bank rejected it.

27. On or about January 18, 2013, the Closing Attorney notified the defendant that the wire to Sri Lankan Company could not be processed.

28. On or about January 20, 2013, the defendant, using his personal email account, sent an email to the Closing Attorney that instructed the Closing Attorney to mail a check to Sri Lanka, for $250,000.00, payable to the Sri Lankan Company.

29. On or about January 20, 2013, the Closing Attorney advised the defendant that the Title Company was more comfortable sending the check to the defendant in Sri Lanka, as opposed to sending the check directly to the Sri Lankan Company.

30. On or about January 20, 2013, the defendant, using his personal email account, responded to the Closing Attorney that, based on Title Company's request, the check should be mailed to a particular address in Colombo, Sri Lanka.

31. Based on these instructions from the defendant, which were conveyed through the Closing Attorney, the Title Company sent a check in the amount of $250,000 to the Sri Lankan Company at the Colombo, Sri Lanka address that the defendant provided.

32. The defendant's efforts to have the $250,000.00 check cashed in Sri Lanka were not successful.

33. On or about March 19, 2013, the defendant, using his personal email account, told the Closing Attorney not to send any emails regarding the Sri Lankan Company to the defendant's official Sri Lankan government email account.

34. On or about March 20, 2013, the Title Company wired $250,000.00 to the Sri Lankan Company's Sri Lankan bank account.

35. On or about October 22, 2013, the defendant collected and subsequently deposited in the Sri Lankan Government Bank Account a cashier's check in the amount of $332,027.35 to replace the amounts previously transferred to Embassy Consultant Company A and Sri Lankan Company, so that there was no loss to the Government of Sri Lanka or any other party as a result of the defendant's conduct.

## Overt Acts

36. On or about the dates set forth below, in the District of Columbia and elsewhere, the defendant, JALIYA CHITRAN WICKRAMASURIYA, for the purpose of executing and attempting to execute the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below:

| On or About Date | Description |
| --- | --- |
| January 17, 2013 | $82,027.35 wire from the Title Company Bank Account payable to Embassy Consultant Company A |
| January 17, 2013 | $250,000.00 attempted wire from the Title Company Bank Account payable to the Sri Lankan Company. |
| March 20, 2013 | $250,000.00 wire from the Title Company Bank Account payable to the Sri Lankan Company. |

(Conspiracy to Commit an Offense, in violation of 18 U.S.C. § 371)

                          MATTHEW M. GRAVES
                          United States Attorney

By:           /s/ Arvind K. Lal
                          Arvind K. Lal, D.C. Bar No. 389496
                          Assistant United States Attorney
                          Matthew G. Grisier
                          Special Assistant United States Attorney
                          555 Fourth Street, N.W.
                          Washington, D.C. 20530
                          Tel: 202-252-7688 (Lal)
                          Arvind.Lal@usdoj.gov