**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **No. 18-CR-120 (TSC)** |
| | : | |
| **v.** | : | |
| | : | |
| **JALIYA CHITRAN WICKRAMASURIYA,** | : | |
| | : | |
| **Defendant.** | : | |

<u>**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**</u>

The United States of America, by its attorney, the United States Attorney for the District of Columbia, submits this memorandum in aid of sentencing.

**I.      BACKGROUND**

On April 1, 2022, the Defendant pled guilty to one count of Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 371. The Defendant, who previously served as Ambassador from the Democratic Socialist Republic of Sri Lanka ("Sri Lanka") to the United States, conspired with other individuals to defraud the government of Sri Lanka during the purchase of the Sri Lankan embassy by inflating the price of the real estate transaction and arranging for the additional funds to be provided by the government of Sri Lanka.

<u>**The Scheme**</u>

In or about October 2012, the Defendant was involved in the purchase of the property at 3025 Whitehaven Street, N.W. to serve as the new Sri Lankan embassy in Washington, D.C. The agreed-upon purchase price for the property was $6.25 million, and the government of Sri Lanka appropriated $6.6 million for the purchase of the embassy.  The HUD-1 form prepared for this sale referenced various payments to be made from the funds provided by the government of Sri Lanka, including a $332,027.35 payment on the buyer's side of the form. This payment

1

represented unaccounted for excess funds.

On or about January 12, 2013, the Defendant prepared and signed a memorandum in which he instructed others to disburse the unaccounted for $332,027.35 in funds to two parties, neither of which had any role in the real estate transaction.  These disbursements were not authorized by the government of Sri Lanka.  On or about January 15, 2013, the Defendant emailed this memorandum to the closing attorney for the government of Sri Lanka.

## The Wire Transfers

After the real estate closing for the new embassy building, the Defendant, with assistance from the closing attorney, worked to disburse the excess funds in accordance with the terms of the memorandum. Specifically, on or about January 17, 2013, the company that conducted the title check of the 3025 Whitehaven Street, N.W. property for the government of Sri Lanka (the "title company") wired $82,027.35 to the bank account of a company owned and operated by an associate of the Defendant.  On or about January 17, 2013, the title company attempted to wire $250,000.00 to a Sri Lankan company; however, the wire transfer could not be completed. On further instruction from the Defendant, the title company sent a check in the amount of $250,000 to the Sri Lankan company at an address provided by the Defendant. After the Defendant's attempts to have this check cashed were unsuccessful, the title company then successfully wired $250,000 to the Sri Lankan company on or about March 20, 2013.

## Discovery of Defendant's Scheme

In or around October 2013, after the discovery of his scheme, the Defendant approached the realtor who had represented the government of Sri Lanka during the embassy purchase and requested that they receive a money transfer of approximately $332,000.  The Defendant later told the realtor that the embassy needed the funds to be transferred to a bank account for the

government of Sri Lanka.  On or about October 22, 2013, the realtor had a cashier's check in the amount of $332,027.35 issued to the Embassy of Sri Lanka.  The Defendant personally collected the cashier's check and subsequently deposited it into a bank account for the government of Sri Lanka.

## II.     THE APPLICABLE GUIDELINES RANGE

The Defendant pled guilty to a single count of Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 371.  This offense carries a maximum sentence of five years of imprisonment and a fine of $250,000 or twice the pecuniary gain or loss of the offense, pursuant to 18 U.S.C. § 3571(b) and (d).  Pursuant to 18 U.S.C. § 3583(b)(2), the Defendant may also be subject to a term of supervised release of not more than three years. The Court may also order restitution pursuant to 18 U.S.C. § 3663, and the Defendant has an obligation to pay any applicable interest or penalties on fines and restitution not timely made.  The Defendant is also obligated to pay a special assessment of $100 for his felony conviction to the Clerk of the United States District Court for the District of Columbia.

Under 18 U.S.C. § 3553(a), the Court must "impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth" in 18 U.S.C. § 3553(a)(2).  The Guidelines range is one factor the Court must consider in determining an appropriate sentence.  *See* 18 U.S.C. § 3553(a)(4).  "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for a sentencing determination.  *Gall v. United States*, 552 U.S. 38, 49 (2007); *see also United States v. Cano-Flores,* 796 F.3d 83, 90 (D.C. Cir. 2015) ("[T]he first step for the sentencing court is to calculate the [Sentencing Guidelines] range").

In the plea agreement, the parties agreed that the following Sentencing Guidelines

sections applied to the Defendant's offense conduct:

| | | |
|---|---|---|
| U.S.S.G. § 2B1.1(a)(2) | Base Offense Level | 6 |

**Specific Offense Characteristics**

| | | |
|---|---|---|
| U.S.S.G. § 2B1.1(b)(9) | Offense involved misrepresentation that defendant was acting on behalf of a government agency | 2 |
| | Total | 10[1] |

The presentence report added 12 levels pursuant to U.S.S.G. § 2X1.1(a) and 2B1.1(b)(1)(G) because the offense involved an intended loss of more than $250,000 but less than $500,000 ($332,027.35). Presentence Investigation Report (PSI), ECF No. 63, at ¶ 60. Therefore, according to the PSI, the adjusted offense level is 20. *Id.* at ¶ 65. Consistent with section six of the plea agreement, the government does not disagree with the PSI's calculations. Plea Agreement, ECF 60, § 6. Moreover, consistent with its obligations in this matter, the government allocutes for the sentence set forth below.

## Total Offense Level and Guidelines Range

After a reduction of two points for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, the plea agreement calculated a total offense level of eight.[2] Plea Agreement, ECF 60, § 4(C).  The PSI calculated a total offense level of 17 after a reduction of three points pursuant to U.S.S.G. § 3E1.1. PSI, ECF No. 63, at ¶ 69.

The Defendant's criminal history score is zero with a corresponding criminal history category of I. *Id.* at ¶ 72.  The parties estimated based upon an adjusted offense level of eight,

---

[1] The defendant's offense level is increased to 10 rather than eight because U.S.S.G. § 2B1.1(b)(9) provides that, if the resulting offense level is less than 10, it should be increased to level 10 after the two points are added.

[2] Under the parties' calculation, the defendant is not eligible for the additional one-point decrease because his offense level is not 16 or greater.  U.S.S.G. § 3E1.1(b).

that the Defendant's guidelines would be zero to six months. Plea Agreement, ECF 60, at § 4(C). The PSI calculated the Defendant's guideline sentence would be 24 to 30 months. PSI, ECF No. 63, at ¶ 120.

### III.   OTHER SENTENCING FACTORS

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Sentencing Guidelines are no longer mandatory.  However, the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and "should be the starting point and the initial benchmark" in determining a Defendant's sentence. *United States v. Gall*, 552 U.S. 38, 46, 49 (2007). Accordingly, this Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Id.* at 49.

Next, the Court should consider all of the applicable factors set forth in 18 U.S.C. § 3553(a).  *Id*. at 49-50.  The Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in section 3553(a).  *United States v. Rita*, 551 U.S. 338, 347-351 (2007).  The section 3553(a) factors include, *inter alia*:  (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant; (4) the need to avoid unwarranted sentence disparities; and (5) the need to provide restitution to any victims of the offense.[3] *See* 18 U.S.C. § 3553(a)(1)-(7).

---

[3]     This factor does not apply to this case as the Defendant replaced the embezzled funds after the discovery of his offense.

## The Nature and Circumstances of the Offense

The Defendant's conduct is serious.  The Defendant abused his position as Ambassador for Sri Lanka to the United States and conspired to defraud the Sri Lankan government.  As ambassador, the Defendant had the responsibility of selecting a new embassy building and overseeing the ensuing real estate transaction.  Instead, he spurned his duty as a representative of his home country and used the transaction to embezzle hundreds of thousands of dollars from the Sri Lankan government.  The Defendant played a key role in the conspiracy, instructing his coconspirators on where to disburse the excess funds, and overseeing the subsequent wire transfers. Without his involvement and authority, the conspiracy could not have been completed.

## The History and Characteristics of the Defendant

The Defendant was born in Sri Lanka but has primarily resided in the United States for the past twenty years as an official of the Sri Lankan government and as a permanent resident alien. Based on the information in the PSI, the Defendant has a supportive family, and he has held a variety of high-level positions in both the private and public sectors during his life. From 2008 to 2014, the Defendant served as Ambassador for Sri Lanka to the United States. His educational background and record of public service to Sri Lanka are impressive and worthy of commendation. However, his conduct in this case also demonstrates that the Defendant was willing to abuse his position of power as ambassador to line his own pockets with embezzled funds. The government acknowledges that the Defendant eventually replaced these funds.

This case represents the Defendant's first offense and conviction, as reflected by his low Criminal History Category. In this case, the Defendant has accepted responsibility and fully admitted his involvement in the offense to which he has pleaded guilty.  The Defendant's acceptance of responsibility has allowed the government to devote resources it would have expended in the prosecution of the case to other investigations.  Although the criminal activity

6

detailed above is concerning, the proposed sentence is a fair and just resolution to this case.

**The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, to Provide Just Punishment; to Afford Adequate Deterrence; <u>and to Protect the Public from Further Crimes of the Defendant</u>**

A sentence of three years of supervised release is just punishment for the Defendant and will promote respect for the law. While the Defendant's offense was serious, he took steps to rectify his conduct and replace the embezzled funds; the Defendant also has no criminal history and, based on the information contained in the PSI, is unlikely to reoffend. Imposing such a lengthy period of supervision will account for the gravity of the Defendant's conduct while providing just punishment in this case.

**Needed Educational or Vocational Training, Medical Care, <u>or Other Correctional Treatment</u>**

The PSI makes no recommendation for any programs for the Defendant. The Government defers to the Court on whether any such programs are needed.

**<u>The Kinds of Sentences Available</u>**

The Defendant's offense is a Class D Felony. 18 U.S.C. § 3559(a)(4). By statute, the defendant is eligible for not less than one nor more than five years of probation because the offense is a Class D Felony. 18 USC § 3561(c)(1). The Court may impose a term of supervised release of not more than three years. 18 U.S.C. § 3583(b)(2). The Guidelines range for supervised release is one to three years. USSG §5D1.2(a)(2). A sentence of three years of supervised release, as proposed by the government, is therefore at the high end of the range established by statute and the Guidelines.

**<u>The Sentencing Range Established by the Guidelines and Pertinent Policy Statements</u>**

As discussed above, the parties have agreed that the Defendant's Guidelines range is zero to six months of imprisonment. The PSI added 12 levels because the offense involved an intended

loss of more than $250,000 but less than $500,000, resulting in a range of 24 to 30 months. However, the PSI acknowledged that the loss table at USSG § 2B1.1 may "over-inflate the seriousness of the offense, especially considering that the defendant returned the entirety of the excess funds from the real estate transaction." PSI, ECF No. 63, at ¶ 146.  The government concurs with this evaluation and maintains that the range agreed to by the parties represents a more accurate assessment of the Defendant's conduct. We are not aware of any applicable policy statements.

### The Need to Avoid Unwarranted Sentencing Disparities among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct

There are no co-defendants in this case, and the Government's proposed sentence is within the Guidelines range agreed to by the parties.  "[I]mposing a within-guidelines sentence is the surest way to avoid unwarranted disparities."  *United States v. White*, 737 F.3d 1121, 1145 (7th Cir. 2013); *see also United States v. Russell*, 600 F.3d 631, 634 (D.C. Cir. 2010) ("sentences within the applicable Guidelines range are presumed reasonable").

### CONCLUSION

Based on a consideration of the section 3553(a) factors, the Government respectfully requests that the Court sentence the Defendant to a term of three years of supervised release.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By:      _____/s/_____
Arvind K. Lal, D.C. Bar No. 389496
Assistant United States Attorney
Matthew Grisier
Special Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
Tel: 202-252-7688 (Lal)
Arvind.Lal@usdoj.gov